**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **TRACY P.[1]**, | : | | |
| *Plaintiff*, | : | **CIVIL ACTION** | |
| **v.** | : | **No. 24-2936** | |
| | : | | |
| **FRANK BISIGNANO,** | : | | |
| **Commissioner of Social Security,** | : | | |
| *Defendant.* | : | | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA**                                                         **June 10, 2026**
**United States Magistrate Judge[2]**

The Commissioner of the Social Security Administration, through an

Administrative Law Judge ("ALJ"), determined that Tracy P. was not disabled and

denied her application for Disability Insurance Benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. She seeks judicial review of the final administrative

decision pursuant to 42 U.S.C. § 405(g) and asks the Court to reverse and remand the

---

[1] Tracy P. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited May 15, 2026).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4.) This matter was originally assigned to United States Magistrate Judge Elizabeth T. Hey (ECF 2) and, following her retirement, was reassigned to me on April 21, 2026. (ECF 9.)

Commissioner's decision that her impairments do not prevent her from performing substantial gainful activity, arguing that substantial evidence does not support it. (ECF 6.)

After careful review of the entire record, Tracy P.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Tracy P., who has at least a high school education, alleged disability beginning on December 1, 2021. (*See* Tr. 17, 27.)[3] At the time, she was 53 years old, "an individual approaching advanced age" under the Social Security regulations.  (Tr. 27.) *See* 20 C.F.R. § 404.1563(d). While her claim was still pending, her age changed to "advanced age." (*Id.*) After her claim was denied initially and upon reconsideration, she requested a hearing before an ALJ.  (*See* Tr. 17.)  In April 2023, the ALJ held a video hearing where Tracy P., her husband ("for moral support"), and her attorney appeared by video and a vocational expert ("VE") participated by phone.  (Tr. 33-58.)

In an August 2023 decision, the ALJ found that Tracy P. had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 19.) The ALJ determined that Tracy P. had severe impairments of osteoarthritis (bilateral knees), lymphedema, chronic venous insufficiency, asthma, obesity, depressive disorder, and

---

[3] There are multiple ways to cite to administrative materials docketed in a Social Security appeal. In this Opinion, citations to materials included in the administrative record primarily use transcript (*i.e.*, "Tr.") pagination. Citations to the underlying administrative decision where the ALJ cited to materials using exhibit numbers and pagination may use that format instead. If a citation creates any confusion regarding the location of a relevant underlying document, context clues can resolve the confusion.

anxiety disorder. (Tr. 20.) Tracy P. also had prior opioid and narcotic addiction diagnoses, deemed to be a non-severe impairment. (*Id.*)  The ALJ also found that Tracy P.'s alleged arthritis of the hands was not medically determinable. (*Id.*) The ALJ then found that Tracy P. did not have any impairment or combination of impairments that would meet or medically equal the severity of a listed impairment.[4]  (Tr. 20-23.)

In making his determination, the ALJ considered the severity of Tracy P.'s mental impairments, both singly and in combination, and determined they did not meet or medically equal the "Paragraph B" or "Paragraph C" criteria outlined in 20 C.F.R. § 404.1520a. (Tr. 21-23.) The ALJ found that Tracy P. "had no more than [a] mild limitation with understanding, remembering or applying information." (Tr. 22.) She also had no more than a mild limitation in interacting with others and with regard to concentrating, persisting or maintaining pace. (*Id.*) She had a moderate limitation in adapting or managing herself.  (*Id.*)

"After careful consideration of the entire record," the ALJ found that Tracy P. had the residual functional capacity[5] ("RFC") to perform sedentary work with limitations. (Tr. 23.)  Specifically, "she can never climb ladders, ropes, or scaffolds, kneel, or crawl."

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe.  *Id.* § 404.1545(a)(2).

(*Id.*) Tracy P. can only "occasionally climb ramps/stairs, balance, stoop, and crouch." (*Id.*) She "can have occasional use of foot controls bilaterally, and occasional pushing or pulling with lower extremities bilaterally." (*Id.*) Also, Tracy P. is required to "avoid concentrated exposure to extreme cold, heat, humidity, pulmonary irritants, and hazards such as dangerous moving machinery or unprotected heights." (*Id.*) The ALJ explained that Tracy P. "can perform only work that can be performed while using a handheld assistive device for prolonged ambulation"—"ambulation defined as longer than 20 feet." (*Id.*) According to the ALJ, Tracy P. "can use her free hand to lift and carry at the sedentary exertional level." (*Id.*) Also, she "can perform only work that requires no assembly line pace, and only requires frequent changes in routine." (*Id.*)

The ALJ determined that Tracy P. was unable to perform any of her past relevant work as a home health aide or data entry clerk/proof machine operator. (Tr. 26.) Based on the VE's testimony and Tracy P.'s age, education, work experience, and RFC, the ALJ determined that Tracy P. had "acquired work skills from past relevant work that [were] transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. 27.) Specifically, Tracy P. could perform the representative occupation of check writer without needing "any new, added skills." (*Id.*) The ALJ concluded that although Tracy P.'s "additional limitations" do not allow her "to perform the full range of sedentary work," a finding of "not disabled" was appropriate because there were available jobs in the national economy that she could perform. (Tr. 28.)

After the Appeals Council denied Tracy P.'s request for review (Tr. 1-6), she filed this action seeking review of the Commissioner's final decision. (ECF 1.)

## II.    LEGAL STANDARDS[6]

The limited question before the Court on review of the Commissioner's final determination is not whether Tracy P. was disabled.  Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that she was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[7] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

---

[6] The regulations governing claims for Social Security Disability Insurance Benefits, which can be found at 20 C.F.R. Part 404, and those governing claims for Supplemental Security Income, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

[7] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). He considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment[8]; (4) has the capacity to do past relevant work, considering his or her RFC; and (5) is able to do any other work, considering his or her RFC, age, education, and work experience. *Id*. The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence.") (emphasis added) (citation omitted). At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

Where mental impairments are under consideration, the ALJ's evaluation includes additional inquiries.  20 C.F.R. § 404.1520a(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  At step two, the ALJ must use the Psychiatric Review Technique ("PRT") to determine whether the claimant has any "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1); *see also Rebecca L. v. Comm'r of Soc. Sec.*, 617 F.

---

[8] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

Supp. 3d 256, 268 (D.N.J. 2022) ("When there is evidence of a mental impairment that allegedly prevents a disability claimant from working, the Commissioner is required to evaluate the claimant's mental impairments by use of a PRT."). The PRT requires the ALJ to assess the claimant's limitations and restrictions from certain mental impairments. 20 C.F.R. § 404.1520a; *see also* SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The ALJ "rate[s] the degree of functional limitation resulting from the impairment(s)" to determine their severity. 20 C.F.R. §§ 404.1520a(b)(2), (d). The ALJ uses "four broad functional areas"—the "paragraph B" criteria—to assess the claimant's ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* §§ 404.1520a(c)(3)-(4). The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). "If a claimant's mental health impairments are not presumed to constitute a disability at step three, any mental impairments assessed in the PRT must be incorporated into the RFC at step four because the RFC must include all 'credibly established limitations[.]'" *Kitchen v. O'Malley*, No. 23-484, 2024 WL 3510868, at *7 (D. Del. July 23, 2024) (*quoting Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245 (3d Cir. 2020)).

"The ALJ—not treating or examining physicians or State agency consultants— must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In doing so, the ALJ considers "all of the available evidence," including objective medical evidence and information that medical or non-medical sources provide about pain or other symptoms in evaluating the intensity and

persistence of symptoms, recognizing that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone . . . ." 20 C.F.R. §§ 404.1529(c)(2)-(3). The ALJ need only consider symptoms "which can reasonably be accepted as consistent with the objective medical evidence and other evidence" in determining whether a claimant is disabled, recognizing that symptoms including pain "are subjective and difficult to quantify . . . ." *Id.* § 404.1529(c)(3). While a claimant's testimony about subjective complaints is relevant, an ALJ is not required to simply accept what the claimant said without question. *See id.* § 404.1529(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *Chandler*, 667 F.3d at 363 ("Although any statements of the individual concerning his or her symptoms must be carefully considered . . . the ALJ is not required to credit them.") (citation modified). Under the applicable regulations for claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). Ultimately, an ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Id.* (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). To decide whether the record was sufficiently developed the Court reads the ALJ's decision "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation modified). "While form is not irrelevant in the scripted analytical steps called for when determining if someone is disabled," an ALJ need not "chant every magic word correctly" to avoid the remand of "an otherwise thorough and well-reasoned opinion . . . ." *Hess*, 931 F.3d at 200. ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered." *Zaborowski*, 115 F. 4th at 639. Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.*; *see also* 42 U.S.C. § 405(b)(1).  Courts defer to the ALJ's assessment of the evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak*, 777 F.3d at 612 (citation omitted). ALJs must articulate how they considered medical opinions and "how persuasive" they are. 20 C.F.R. §§ 404.1520c(a), (b)(1). An ALJ is not required to discuss "every tidbit of evidence" when making their determination. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see Fargnoli*, 247 F.3d at 41-42 ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records.").

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion"). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing" the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Tracy P. bears the burden to explain how any "error to which [s]he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III.    DISCUSSION

On appeal, Tracy P. maintains that remand is required because the ALJ failed "to account for her need to use a walker as prescribed by her treating physician." (ECF 6 at 6.) She also argues that the ALJ's determination of her mental RFC did not "fully account for the moderate limitation" imposed with respect to her ability to adapt or manage herself. (*Id.*) She also contends that the ALJ did not consider the impact of her mild

mental limitations on her ability to perform the semiskilled occupation of checkwriter. (*Id.*) The Commissioner responds that substantial evidence supports both the ALJ's physical and mental RFC determinations, so, he maintains that remand is not required. (ECF 7 at 5-13.)

A review of the record demonstrates that substantial evidence supports the ALJ's decision and there is no reason to remand.

### A.      Substantial Evidence Supports the ALJ's Physical RFC Determination.

Tracy P. argues that substantial evidence does not support the ALJ's determination that she could still perform work because there is "clear" evidence that she was prescribed a "wheeled walker" and the VE testified that someone who needed to use one would be unable to work. (ECF 6 at 7-8.) The Commissioner counters that substantial evidence supports the ALJ's determination that Tracy P. could perform sedentary work with a handheld device for prolonged ambulation. (ECF 7 at 6-6.)  Considering the record, the ALJ's evaluation of Tracy P.'s need for an assistive device is supported by substantial evidence which, again, is not a high evidentiary threshold.  *Biestek*, 587 U.S. at 103.

For an ALJ to determine whether an assistive device like a walker is "medically required," Social Security Ruling 96-9p provides that "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). An ALJ's RFC determination is not required to account for the use of a walker absent substantial

evidence that the device was medically necessary. *See Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. Nov. 25, 2002) (holding that a prescription and a checked box that an assistive device was required for ambulation, without more, were "insufficient to support a finding that [the claimant's] cane was medically necessary").

Here, Tracy P. contends that "[o]bjective medical evidence corroborates the need for a walker." (ECF 8 at 1.) To support her contention, she asserts that "Dr. Foster, in treatment notes dated August 8, 2022, ordered a single-pronged offset cane and a wheeled walker with seat" for her use. (ECF 6 at 7 (citing Tr. 675).) She also points to her own testimony that she "used the walker and the cane to help with her walking around the house." *(Id.* at 8 (citing Tr. 46).) To support her contention that the ALJ's decision requires remand, she cites 2018 x-rays of her knees showing "moderate bilateral tricompartmental [osteoarthritis] with joint space narrowing, marginal spurring, and moderate effusions bilaterally." *(Id.* (citing Tr. 463).) She also cites subsequent 2021 and 2022 x-rays of her left knee showing "degenerative joint disease," "bone-on-bone appearance," and "severe degenerative changes with osteophyte formation." *(Id.* at 1-2 (citing Tr. 361, 363, 412, 615).) She notes that in 2021, a physician wrote that she was "an appropriate candidate for consideration of total knee replacement." *(Id.* at 7 (citing Tr. 362, 364).) Tracy P. argues that the ALJ "cannot substitute his own medical judgment for that of [her] treating physician." *(Id.* at 8.)

The ALJ recognized that Tracy P. had a prescription for a walker. (Tr. 24.) Indeed, his RFC determination, which considered all her symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and other

12

evidence," explicitly considered her claim that she requires a walker. (Tr. 23-25.) He acknowledged that Tracy P. reported "using a walker or cane and that without such support . . . she falls." (Tr. 24.) He explained that Tracy P. had noted her preference for using a walker instead of a cane "because it is more comfortable, and because it has a seat." (*Id.*) He noted that she said she "uses both devices inside the house, as well as outside." (*Id.*) The ALJ observed that Tracy P. and her representative both asserted her "need" and prescription for a walker but explained that the medical assessment that her treating provider had submitted to support her benefits application "refers only to a cane." (*Id.* (citing Tr. 729-32 (Ex. 14F)).) The ALJ also explained that while there were "indications of a limping gait and reduced range of motion" at one examination, during that same examination, Tracy P.'s "knees were described as stable, with normal strength and sensation. (*Id.* (citing Tr. 363 (Ex. 2F/6)).) Overall, the ALJ determined that the record showed "no need for a walker, and supports the cane limitation described in the" RFC. (Tr. 25.)

The record from Tracy P.'s August 2022 visit to Krys E. Foster, M.D., where she was prescribed a walker begins with a note that her "chief complaints" included "questions about disability" and "sw-dme," an apparent reference to durable medical equipment. (Tr. 673.) At the visit, Tracy P. offered her subjective complaints regarding "[c]hronic knee pain, impeding function," and explained that although an orthopedic doctor had "recommended surgery," it "ha[d] not been scheduled." (*Id.*) Tracy P. requested a "new cane" and reported that she "[c]urrently has [a] very old cane." (Tr. 674.) According to her visit note, Tracy P. was "looking into starting disability through

social security" and said "there ha[d] been difficulty obtaining records for disability." (*Id.*) The doctor "[r]ecommended she obtain necessary forms from social security and follow up with specialist, [orthopedics], regarding disability." (*Id.*) Under the visit's "objective" notes, the doctor reported that Tracy P. "ambulates with single pronged cane[]; left knee with significant swelling, antalgic gait." (Tr. 674-75.) The doctor's assessment and plan for her primary osteoarthritis of both knees noted Tracy P. had "been following with joint injections, last done" in May 2022, and encouraged her to follow up and schedule surgery with orthopedics and to contact the "social security office for forms and medical records department if needed." (*Id.*) The doctor also ordered a single-pronged offset cane and a wheeled walker with a seat. (*Id.*) Her order did not address whether Tracy P. was "required to use the walker all the time, periodically, or in certain circumstances as required under SSR 96-9p." *Johnson v. Kuakazi*, No. 22-914, 2023 WL 6387906, at *7 (D. Del. Sept. 29, 2023).

In her Reply, Tracy P. argues that the ALJ's determination is undermined by a Medical Source Statement that Dr. Foster completed in January 2023—*i.e.*, after she prescribed a walker—which "placed significant work-preclusive limitations on" Tracy P.[9] (ECF 8 at 2 (citing Tr. 730-31).) In that opinion, Dr. Foster checked a box stating

---

[9] The bottom of the Medical Source Statement Form includes this statement:

Please be advised that this form was generated at Pond Lehocky Disability and sent to the Claimant's treatment provider for review, completion and signature. Pond Lehocky Disability does not provide any specific instruction to the treatment provider with regard to the completion of the form other than a request to our office prior to the completion of the questionnaire should a fee be required.

14

that Tracy P. was limited to one hour of standing/walking in an eight-hour workday. (Tr. 730.)  She wrote that Tracy P. ambulates with a cane." (Tr. 731.) Tracy P. concedes that Dr. Foster's statement "did not specifically mention a walker." (ECF 8 at 2.)

Tracy P. has not shown that remand is required based on the ALJ's determination that she could perform sedentary work with a handheld device for any prolonged ambulation.  (Tr. 23.)  The ALJ's analysis of whether she needed to use a walker—or not— and its subsequent impact on the ALJ's disability determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce*, 487 U.S. at 565.

**B.      Substantial Evidence Supports the ALJ's Mental RFC Determination.**

The ALJ's RFC assessment limited Tracy P. to "work that requires no assembly line pace[] and only requires frequent changes in routine." (Tr. 23.) She maintains that remand is required because, in her view, the mental limitations that the ALJ imposed in her RFC do not fully account for the moderate limitation that he imposed regarding her ability to adapt or manage herself. (ECF 6 at 8.) Tracy P. complains that the ALJ "necessarily found" that she "would experience moderate limitations with regard to regulating her emotions, controlling her behavior, and maintaining her well-being in a work setting" and, as a result, substantial evidence does not support his finding that she "can perform the semiskilled position of check writer." (*Id.* at 9.)  She also argues that

---

(Tr. 731.)  Forms like this, where a physician's only obligation is to "check a box or fill in a blank[,] are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

"the ALJ did not take into account the impact that mild limitations with regard to understanding, remembering, or applying information, interacting with others, and concentrating, persisting or maintaining pace would have on [her] ability to perform the duties of check writer." (*Id.* at 10.)  The Commissioner responds that Tracy P.'s "argument that she cannot perform the job that the ALJ identified because it is semi-skilled and she has mild-to-moderate limitations in the four broad areas of mental functioning . . . is nothing more than a request for a categorical rule" which is expressly prohibited under *Biestek* and *Hess*. (ECF 7 at 13.) In his view, the ALJ's mental RFC determination is supported by substantial evidence and should be affirmed.  (*Id.*)  Considering the record, the ALJ's treatment of Tracy P.'s mental limitations does not require remand.

In *Hess*, the Third Circuit explained in a binding decision that "no incantations are required" for the ALJ's decision "at steps four and five simply because a particular finding has been made at steps two and three."  931 F.3d at 209; *see also Leichter v. Kijakazi*, No. 20-6147, 2021 WL 5904619, at *7 (E.D. Pa. Dec. 13, 2021) (explaining that an "ALJ's failure to include limitations related to mental impairments found mild at steps two and three does not necessarily result in error at step four"). Steps two and three and steps four and five "serve distinct purposes and may be expressed in different ways." *Hess*, 931 F.3d at 209.  "Unlike the findings at steps two and three, the RFC must be expressed in terms of work-related functions," and the step two and three findings "will not necessarily translate to the language used at steps four and five." *Id.* At step four, "a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained." *Id.* To withstand

16

remand, an "ALJ's statement of the claimant's limitation in the final analytical steps" need only "be sufficient to reflect all of a claimant's impairments." *Id.* at 210.

In her initial brief, Tracy P. explains that the Commissioner must "consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not considered severe." (ECF 6 at 12 (citations omitted).) She argues that the ALJ fell short because he did not adequately consider her mental limitations when formulating his RFC and questioning the VE. (*Id.* at 10.) She appropriately cites 20 C.F.R. § 404.1545(a)(2), which provides that the ALJ should have considered "all" of her "medically determinable impairments" that he was aware of, "including . . . medically determinable impairments that are not 'severe,'" in determining her RFC. (ECF 6 at 12.) She also cites—with no parenthetical explanation or pinpoint citation—*Bauer-Cromartie v. Astrue*, No. 07-1392, 2008 WL 2152057 (E.D. Pa. May 21, 2008), a non-precedential, pre-*Hess* decision that granted remand "for clarification" of the ALJ's reasoning. *Id.* at *2. (*See* ECF 6 at 12.) In addition, she cites *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 360-62 (E.D. Pa. 2018), another pre-*Hess*, non-precedential decision that granted remand in part so the ALJ could address the plaintiff's moderate limitations in adapting or managing himself. (ECF 6 at 10.)

Indeed, instead of applying—or even citing *Hess*[10]—in her initial brief, Tracy P. largely cites to an array of out-of-circuit or pre-*Hess* published decisions, including *Wells*

---

[10] Counsel is reminded of his duty to disclose adverse authority to the Court under Rule 3.3(a)(2) of the Pennsylvania Rules of Professional Conduct, which includes an obligation to provide the Court with case citations that are up-to-date in light of ever-evolving law. *See* Pa. R.P.C. 3.3(a)(2) (Candor Toward the Tribunal); *see also* Pa. RPC 1.1

*v. Colvin*, 727 F.3d 1061, 1068-71 (10th Cir. 2013), which she contends stand for the proposition that an ALJ's decision can only "be affirmed so long as in the body of the RFC analysis, the ALJ affirmatively explains why all mental functional limitations have been omitted despite the prior PRT findings." (ECF 6 at 12.) *Gunn v. Kijakazi*—the only in-circuit, in-district, post-*Hess,* published decision that Tracy P. cites to support her argument addressing the ALJ's treatment of her mental limitations in her initial brief—cites *Hess*, and acknowledges that *Hess* is "binding." 705 F. Supp. 3d 315, 330-33 (E.D. Pa. 2023).  (ECF 6 at 12.)  Nevertheless, *Gunn*—persuasive authority, at most—still required the ALJ's "valid explanation" for the omission of mental limitations from the plaintiff's RFC to meet the bar set in *Wells* and in the Third Circuit's pre-*Hess* decision in *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).[11]  *Hess* does not require so much.

---

(Competence), cmt. 8 ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice . . . ."). *Cf. Lowenschuss v. W. Publ'g Co.*, 542 F.2d 180, 185 (3d Cir. 1976) ("That segment of the public engaged in the practice of law necessarily must remain abreast of decisions which subtly shape the contours and the body of the evolving law.").

[11] The only in-district, post-*Hess* decisions that Tracy P. cites in her footnote listing unpublished decisions "holding the same," with no further explanation, are not binding and fail to persuade. *Leichter*, explicitly distinguishes *Hess.* 2021 WL 5904619, at *8 ("The ALJ's consideration of Plaintiff's mental limitations at step four is problematic, and is distinguishable from *Hess* . . . ."). (ECF 6 at 14-15 n.1.)  *Meersand v. Kijakazi*, does not cite *Hess* and remands based on the conclusion that the ALJ's RFC determination "provided *no* accommodations for" the Plaintiff's "mild mental limitations" and because the ALJ's "analysis provided *no* explanation as to why restrictions in this area were not discussed." No. 20-1084, 2021 WL 5003331, at * 3 (E.D. Pa. Oct. 28, 2021) (emphasis added). (ECF 8 at 4)  That is not the circumstance here.  *Benedetto v. Saul* does not discuss *Hess.*  No. 19-4021, 2020 WL 5763551, at *6-7. Instead, it relies on *Ramirez* and a non-binding pre-*Hess* decision in *Green v. Colvin*, 179 F. Supp. 3d 481, 483 (E.D. Pa. 2016), to require remand because the ALJ made "no reference" to the plaintiff's mild mental limitations in determining her RFC or when questioning the VE. All the other cases that Tracy P. lists are either out-of-

18

Even after the Commissioner's Response raised *Hess*' binding precedent (ECF 7 at 8), Tracy P. failed to address its import in her Reply.  Instead, she argues that the relevant question on appeal "is whether the ALJ's narrative explains why he omitted limitations he already found credible from his RFC." (ECF 8 at 3.)  She cites *Wells* again, arguing that the case law "is clear." (*Id.*)  She argues that *Wells* requires "a narrative discussion of the claimant's mental impairments and the functional limitations they caused," whether "the mental impairments in question were non-severe," or not.  (*Id.*)  *Wells*, however, "does not bind this Court." *Jennifer J. v. Bisignano*, No. 24-1863, 2025 WL 1435628, at * 6 (E.D. Pa. May 19, 2025); *see also Smith v. Bisignano*, No. 25-1287, 2026 WL 935840, at *6 (M.D. Pa. Apr. 7, 2026) (noting the plaintiff's curious reliance "on a host of out-of-circuit case law, as well as some unpublished caselaw from this circuit," and explaining that "any discussion of more recent binding caselaw in this circuit" — *i.e.*, *Hess* — was "noticeably absent from the plaintiff's briefing"). What matters instead is whether the ALJ properly accounted for Tracy P.'s mental impairments in formulating her RFC. A review of the record shows that he did all that he was required to do consistent with *Hess*.

In considering Tracy P.'s impairments at steps two and three, the ALJ found that she had no more than a moderate limitation in adapting or managing herself. (Tr. 22.)  He explained that she could "cook, clean and care for her own personal needs" when she was "not in pain" and that she "sometimes babysits her grandchildren. (*Id.* (citing Tr. 201-10 (Ex. 4E)).) He noted that she reported not leaving the house often because of her fear

---

circuit or were decided before *Hess*. (ECF 6 at 14-15 n.1.)

of falling. (*Id.*) He considered that she had reported she was able to follow "written and spoken instructions well," although she had recently stated that she needed "to have spoken instructions repeated." (*Id.* (citing Tr. 238-46 (Ex. 11E)).) He considered her testimony regarding "limitations with stress and adjusting to changes." (*Id.*) He also noted that her treatment notes included "multiple notes of negative for psych symptoms." (*Id.* (citing Tr. 666-718 (Exs. 12F; 13F)).)

The ALJ found that Tracy P. had only mild limitations in (1) understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace. (*Id.*) He explained that Tracy P. reported that she could manage her own finances, including performing multi-step tasks, like using a checkbook or money order, and that she could shop online and by telephone. (*Id.* (citing Tr. 205, 241 (Exs. 4E/5; 11E/4)).) He assessed her to have "no difficulty understanding and responding appropriately to questions asked of her at the hearing" and noted that she was able to "describe her past work responsibilities." (*Id.*) He acknowledged that during her consultative examination she "was noted to have mild memory impairment due to focusing difficulties." (*Id.* (citing Tr. 654 (Ex. 11F/5)).) However, he explained that the record showed "that her providers believe that she understands the nature of her impairments, treatment plans, and when to seek follow-up or emergency care relating to them." (*Id.* (citing Tr. 298, 315, 335, 464, 473, 487, 516, 666, 675 (Exs. 1F/8, 25, 45; 7F/10, 19, 33, 62; 12F/4, 13)).) He acknowledged Tracy P.'s testimony that she seldom leaves her home due to pain and difficulty walking but noted that she stays "connected with others in person, by phone, and by text," "has no difficulties getting along with authority

20

figures," and had a "fair manner of relating" during her consultative examination. (*Id.* (citing Tr. 201-10, 238-46, 692 (Exs. 4E; 11E; 13F/4)).) The ALJ recognized Tracy P.'s testimony regarding her "difficulty concentrating due to pain," but noted that during her consultative examination her concentration was only "mildly impaired." (*Id.* (citing Tr. 654 (Ex. 11F/5)).) While at one point Tracy P. had reported an "average" attention span, the ALJ acknowledged that "[m]ore recently" she reported not finishing what she starts. (*Id.* (citing Tr. 207, 243 (Exs. 4E/7; 11E/6)).) The ALJ found that Tracy P. had not shown that she had a "serious and persistent" mental disorder or a "minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life." (Tr. 22-23.)

In determining Tracy P.'s RFC, the ALJ explained that she "described herself as very forgetful" and reported "a history of depression," continuing to "feel anxious and sad," and "los[ing] track of her thoughts while speaking." (Tr. 24.) He noted that she, nevertheless, "presented as negative for psych limitation." (*Id.* (citing Tr. 455-609, 663-688 (Exs. 7F; 8F; 12F)).) He also explained that although primary care notes indicated that Tracy P. was "seeing psych" or "following with therapist," "no psychotherapy or psychiatric treatment is reflected in the record." (Tr. 25 (citing Tr. 471-72 (Ex. 7F/17-18)).) Indeed, there are no notes in the record of such treatment. The ALJ highlighted that Tracy P. had been prescribed "psychotropic medications by her family care providers" and seemed to have "a good response" with "improved mood." (*Id.* (citing Tr. 473, 550 (Exs. 7F/19; 8F/21)).) He cited her report that she had stopped seeing a therapist by February 2022 and was "relying on other social supports." (*Id.* (citing Tr. 593 (Ex. 8F/64)).)

21

In reaching his determination, the ALJ also considered opinions regarding Tracy P.'s mental limitations from state agency psychologists which were not "entirely persuasive," explaining that they had neither treated nor even examined Tracy P.  (Tr. 25-26.) He reviewed the conclusions of a consultative examiner psychologist who suggested that Tracy P. "had no more than mild imitations in all aspects of mental functioning except for responding appropriately to usual work situations and changes in the work setting" and found they were persuasive.  (Tr. 26.)

Ultimately, considering the limited documented mental health treatment and a lack of deterioration requiring intensive mental health services, the ALJ decided that it was appropriate to address Tracy P.'s mental impairments with a limitation "to work that requires no assembly line pace, and only requires frequent changes in routine" in order "to accommodate any residual/untreated anxiety." (*Id*.)  The ALJ's consideration of Tracy P.'s mental limitations is not distinguishable from *Hess*.  There is no omission suggesting that he "violated his responsibility to include in the RFC assessment limitations attributable to severe as well as non-severe impairments." *Leichter*, 2021 WL 5904619, at *8 (granting remand where "the ALJ found mild limitations in all four paragraph B criteria but did not include any mental health-related limitations in the RFC assessment or in the hypotheticals to the VE"). The ALJ adequately explained his consideration of Tracy P.'s alleged mental impairments and the record evidence underlying them. Substantial evidence exists to support his conclusion that a limitation to work "that only requires frequent changes in routine" and no assembly line pace (Tr. 23) was sufficient to accommodate them and that, with that limitation in place, Tracy P. could perform work

as a check writer, "with 26,000 jobs in the national economy." (Tr. 27.) Remand is not required to allow the ALJ to comply with the requirements set forth in the Tenth Circuit's non-binding decision in *Wells*.

## IV.    CONCLUSION

Upon review of the record, Tracy P. has not shown that any of her complaints would have changed the outcome of her case under the governing regulations, so remand for further consideration is not required. *Rutherford*, 399 F.3d at 553. Substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"— exists to support the ALJ's RFC determination and conclusion that Tracy P. was not disabled. *Biestek*, 587 U.S. at 103. Her Request for Review of the Commissioner's final decision is **DENIED**, the decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.

23